# In the United States Court of Federal Claims

No. 25-855

(Filed: July 22, 2026)

```
* * * * * * * * * * * * * * * * * * * *
                                       *
CATHERINE G. SMITH, et al.,            *
                                       *
                  Plaintiffs,          *
                                       *
        v.                             *
                                       *
THE UNITED STATES,                     *
                                       *
                  Defendant.           *
                                       *
* * * * * * * * * * * * * * * * * * * *
```

*Lindsay S.C. Brinton*, Attorney, Lewis Rice LLC, of St. Louis, Missouri, for Plaintiff.

*Anthony P. Hoang*, Trial Attorney, Natural Resources Section, Environment Division, U.S. Department of Justice, of Washington, D.C., for Defendant.

**OPINION AND ORDER**

**SOMERS**, Judge.

It is axiomatic that an attorney cannot file a lawsuit on behalf of someone that he or she does not represent.  It should be equally axiomatic that, unless Oda Mae Brown or Cole Sear is recruiting a firm's clients, dead people cannot hire attorneys.  *See* GHOST (Paramount Pictures 1990); THE SIXTH SENSE (Hollywood Pictures 1999) ("I see dead people.").  Yet here, Lindsay S.C. Brinton signed an amended complaint on behalf of at least eight individuals who predeceased both the accrual of the cause of action and the filing of the operative complaint—in one instance by nearly ***twenty years***.  This is patently unacceptable.  "As any lawyer worth his salt knows, a dead person cannot maintain a [ ] claim."  *In re Engle Cases*, 767 F.3d 1082, 1086–87 (11th Cir. 2015).  But more importantly, this act violates Rule 11 of the Rules of the U.S. Court of Federal Claims ("RCFC").

As will be explained more fully below, the filing of Plaintiffs' first amended complaint was, in part, frivolous because Ms. Brinton lacked authorization to file or maintain the claims on behalf of eight of the plaintiffs.  "Perhaps the most basic factual contentions implicit in a complaint are that the plaintiff consents to the filing of suit and prays for the relief requested."  *In re Deep Vein Thrombosis*, No. 04-1606 VRW, 2008 WL 2568269, at *1 (N.D. Cal. Jun. 24, 2008).  Deceased individuals obviously could not have authorized counsel to bring suit on their behalf.  Therefore, for at least eight of the plaintiffs, "the most basic factual contention" in the

first amended complaint—that Alloree F. Buckner, Charles Suber, Anne M. Dempsey, Maureen S. Robinson, James Woodford Cowan, Terry T. Moyer, Dennis G. Durham, and Thomas F. Ellwood authorized and prayed for the relief requested—was untrue. As one United States District Judge has observed, "'attorneys are the filter upon which courts rely to maintain the integrity of, and trust in, our judicial process.' On the rare occasion when attorneys undermine that integrity and trust, there must be consequences." *In re Engle Cases*, 283 F. Supp. 3d 1174, 1183 (M.D. Fla. 2017) (alteration omitted) (quoting *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010)). This is such an occasion.

## BACKGROUND

In the complaint that initiated this action, filed on May 20, 2025, there were two named plaintiffs: Catherine G. Smith and Phillip W. Smith. ECF No. 1. The Smiths filed suit as co-trustees of the Catherine G. Smith Trust. *Id.* at 1. On September 8, 2025, Plaintiffs, with the Court's leave, filed their first amended complaint, which, *inter alia*, added over sixty plaintiffs to the case. ECF No. 9 at 1–5. This date, **September 8, 2025**, is the first date relevant to the matter presently before the Court. Of additional relevance to this matter was the inclusion of Alloree F. Buckner, Charles Suber, Anne M. Dempsey, Maureen S. Robinson, James Woodford Cowan, Terry T. Moyer, Dennis G. Durham, and Thomas F. Ellwood as plaintiffs in the first amended complaint. *Id.*

Plaintiffs seek just compensation under the Fifth Amendment for the government's alleged taking of Plaintiffs' property for recreational trail use under the National Trail System Act, 16 U.S.C. §§ 1241–51. *See id.* ¶¶ 3–4. In cases such as this, commonly referred to as rails-to-trails cases, the alleged taking arises—and thus the cause of action accrues—on the date on which the Surface Transportation Board ("STB") issues a Notice of Interim Trail Use ("NITU"). *See Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) ("We therefore hold that the appropriate triggering event for any takings claim under the Trails Act occurs when the NITU is issued."). Here, in their complaint, Plaintiffs allege that on "December 19, 2024, the STB issued a NITU for the right-of-way" at issue in this litigation. ECF No. 9 ¶ 10 (citing ECF No. 9-3). Thus, **December 19, 2024**, is another date of relevance to the matter presently before the Court.

Finally, the Court turns to a third set of relevant dates, comprised of the dates on which eight of the individuals named as plaintiffs in this case passed away: Alloree F. Buckner (**February 9, 2006**); Charles Suber (**January 21, 2013**); Anne M. Dempsey (**February 16, 2020**); Maureen S. Robinson (**February 27, 2020**); James Woodford Cowan (**January 11, 2021**); Terry T. Moyer (**April 17, 2023**); Dennis G. Durham (**November 11, 2024**); and Thomas F. Ellwood (**December 15, 2024**). *See* ECF Nos. 25–26, 28–32, 38. Plaintiffs' counsel informed the Court of these deaths on December 29, 2025, ECF Nos. 25–26; January 16, 2026, ECF Nos. 28–31; January 25, 2026, ECF No. 32; and February 20, 2026, ECF No. 38. The dates of death for all eight of these plaintiffs precede both December 19, 2024, the alleged date of taking, and September 8, 2025, the date the first amended complaint was filed.

**DISCUSSION**

**A.     Legal Standard**

Although the Court has more than one avenue available to address the conduct at issue here, *see, e.g.*, 28 U.S.C. § 2521, sanctions under RCFC 11 are the most appropriate under the circumstances. RCFC 11(b) encapsulates, *inter alia*, an attorney's obligation to ensure that the representations in his or her filings with the Court are factually and legally sound. To that end, RCFC 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

RCFC 11(b). In order to curb filings that run afoul of RCFC 11, the rule further provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that RCFC 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." RCFC 11(c)(1). Sanctions under RCFC 11 may be imposed upon motion by a party or on the Court's own initiative after "order[ing] an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated RCFC 11(b)." RCFC 11(c)(3). Any sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." RCFC 11(c)(4).

While there has been some dispute among the circuits regarding whether *sua sponte* Rule 11 sanctions should be held to a different standard, only the Second Circuit has required a showing of subjective bad faith before imposing sanctions *sua sponte*. *In re Engle Cases*, 283 F. Supp. at 1213 ("[T]his Court is not aware of any other circuit court of appeals, beyond the Second Circuit, holding that *sua sponte* Rule 11 sanctions require a showing of subjective bad faith." (footnote omitted)). Moreover, "[n]othing in the text or commentary to the current version suggests that, even when a court acts on its own initiative, sanctions may be imposed *only* if a litigant filed a frivolous claim knowingly or purposefully." *Id.* at 1214 (emphasis in original); *see also Brooker v. United States*, 107 Fed. Cl. 52, 56 (2012) (considering Rule 11 sanctions *sua sponte* and stating the standard is objective reasonableness); *1-10 Indus. Assocs., LLC v. United States*, No. 04-1209 C, 2007 WL 5160385, at *3 (Fed. Cl. Mar. 19, 2007), *rev'd on other grounds*, 528 F.3d 859 (Fed. Cir. 2008) ("[T]he court concludes that it need not find that defendant's counsel acted in bad faith or even intentionally intended to mislead the

court, in order to impose sanctions, but instead must analyze his conduct under an objective standard of reasonableness, *to wit*, whether a reasonable, competent attorney, acting in like circumstances, would have believed a filing to be factually justified." (citing cases)).  If anything, Rule 11 (and thus RCFC 11) was amended to incorporate expressly an objective standard.  *In re Engle Cases*, 283 F. Supp. at 1214 ("On the contrary, Rule 11 was amended in 1983 for the precise purpose of replacing a subjective standard with an objective one."); FED. R. CIV. P. 11, Adv. Cmt. Note, 1983 amend. ("This establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments."); *Hashemi v. Campaigner Publ'ns., Inc.*, 784 F.2d 1581, 1583 (11th Cir. 1986) ("The [1983] amendments abrogated the bad faith standard in favor of a more stringent objective standard." (citation omitted)).  Moreover, the text of RCFC 11 already incorporates a difference in treatment for sanctions imposed pursuant to motion versus sanctions imposed by the Court *sua sponte*: attorneys' fees are only awardable as a sanction imposed as the result of a motion from a party. RCFC 11(c)(4).  Given this explicit difference in treatment, reading a further limitation into the plain meaning of the text of RCFC 11 would be inappropriate.  Furthermore, the rationale for imposing a heightened standard on sanctions imposed *sua sponte* is to prevent chilling advocacy. *See United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115–16 (9th Cir. 2001) ("Judges therefore should impose sanctions on lawyers for their mode of advocacy only in the most egregious situations, lest lawyers be deterred from vigorous representation of their clients.").  But there cannot be a chilling effect in a case such as the present one, as "a lawyer without authority to file suit for his client need not be encouraged to advocate zealously for such client." *In re Deep Vein Thrombosis*, 2008 WL 2568269, at *5.

**B.    Analysis**

As discussed above, Plaintiffs filed several notices and suggestions of death from December 2025 through February 2026.  ECF Nos. 25–26, 28–32, 38–39.  Initially, the Court did not question these filings.  Cases often last a long time and, especially when there are many plaintiffs, a plaintiff may pass away.  That is why RCFC 25(a) exists.  However, as the Court reviewed the notices and suggestions of death, it immediately became apparent that many of the deaths significantly preceded both the alleged date of taking and the date of the filing of the first amended complaint.  Indeed, one plaintiff died more than *nineteen years* prior to the filing of the amended complaint.  *Compare* ECF No. 9 at 31 (date of filing: September 8, 2025), *with* ECF No. 38 at 1 (date of death: February 9, 2006).  That same plaintiff also predeceased the alleged date of taking by more than *eighteen years*.  *Compare* ECF No. 9 ¶ 10 (alleged date of taking: December 19, 2024), *with* ECF No. 38 at 1 (date of death: February 9, 2006).  The deaths of seven other plaintiffs preceded the filing of the amended complaint by periods ranging from almost 270 days to more than twelve-and-a-half years.  *See* ECF No. 31 at 1 (date of death: December 15, 2024); ECF No. 28 at 1 (date of death: January 21, 2013).  These long gaps between the dates of death and the alleged date of taking and the date of the filing of the amended complaint left the Court to question: *when* and *how* did these deceased individuals consent to counsel filing suit on their behalf?

Seeking answers, the Court issued a show cause order.  ECF No. 36.  Counsel was to show cause as to why:

(1) the Court should not stay this case until such time that it can verify that the other plaintiffs in this case are, in fact, represented by Misses Brinton and Largent and that they consented to the amended complaint being filed on their behalf; (2) Misses Brinton and Largent filed an amended complaint on behalf of plaintiffs who died prior to the filing of the complaint and the date that the cause of action allegedly arose; and (3) Misses Brinton and Largent should not be sanctioned under Rule 11 of the Rules of the U.S. Court of Federal Claims, 28 U.S.C. § 2521(b), or the Court's inherent contempt power for filing an amended complaint on behalf of plaintiffs who predeceased the filing of the amended complaint and the date that the cause of action allegedly arose.

*Id.* at 1.

In response to the show cause order, counsel explained that these deceased plaintiffs were included in the amended complaint in error because they were "reflected as the owners of the property pursuant to the deeds recorded in Henderson County and Polk County, North Carolina." ECF No. 37 at 2–3 (providing a table of the deceased plaintiffs and the pages on which they are mentioned in the amended complaint, not including the caption). According to counsel, "[i]n drafting the First Amended Complaint, the owners as reflected in the deeds for each property were included rather than just the surviving spouses who had engaged the undersigned," but counsel acknowledged that "only the surviving spouses should have been listed." *Id.* at 3–4. Counsel further asserted that this "error" was remedied by "mov[ing] to file a Second Amended Complaint to correct the oversight in filing the First Amended Complaint with the record-title owners listed, rather than the surviving spouses who had engaged the undersigned." *Id.* at 3. While this response provides some explanation as to why the deceased individuals were included as property owners in the amended complaint's factual allegations, it provides little explanation as to why individuals who admittedly did not engage Ms. Brinton's services were named as plaintiffs in the amended complaint.

Additionally, counsel argued that a stay to verify representation was not necessary because the remaining spouses have engaged them as counsel. *Id.* at 4. Similarly, counsel contended she should not be sanctioned because including unrepresented, deceased individuals as plaintiffs was an "inadvertent error" and that "once the error was recognized, counsel immediately sought to correct it." *Id.* Expanding on the explanation that the error was inadvertent, counsel argued that there is an "open question" as to which standard—"bad faith" or lack of "objective reasonableness"—applies to RCFC 11 sanctions. *See id.* at 6. Counsel concluded, however, that regardless of the standard applied, she does not meet either bar since she "corrected" the "error." *See id.* ("Yet, regardless of which standard is applied, errors of the type which occurred in this case are not typically the subject of Rule 11 sanctions." (citing *White v. Fox*, 576 F. App'x 327, 331 (5th Cir. 2014); *In re Bees*, 562 F.3d 284, 287–88 (4th Cir. 2009))). Furthermore, counsel asserted that she should not be sanctioned pursuant to 28 U.S.C. § 2521(b) because she has neither "violated the Court's order" nor sought "to ignore the spirit (as well as the letter) of the Court's orders and rules." *Id.* at 7. Lastly, counsel maintained that she should not be sanctioned pursuant to the Court's inherent contempt power as her behavior was "an inadvertent error" rather than purposeful, intentional, or in bad faith. *Id.* at 8–9 (emphasis

omitted).  Because the Court finds that RCFC 11 is the most appropriate vehicle to address the conduct at issue here, it will address Ms. Brinton's conduct only in relation to that rule.

### 1.        Presenting the First Amended Complaint to the Court Violated RCFC 11.

Although the Court understands Ms. Brinton's urging that the error was inadvertent and corrected, the conduct here is not the type that can be countenanced by simply labeling it as inadvertent, correcting the error, and moving on.  This was not a mere factual error in the property descriptions.  Rather, by listing these individuals as Plaintiffs, Ms. Brinton represented to the Court that she represented the deceased individuals; that they authorized her to bring and maintain suit on their behalf; and that they prayed for the relief requested in the complaint.  Thus, the question here is not about names on a deed—it is about whether these eight individuals consented to Ms. Brinton's representation.  She admits that they did not.  *Id.* at 3–4.  It is black letter law that an attorney cannot file suit on behalf of someone who is not his or her client.  *In re Deep Vein Thrombosis*, 2008 WL 2568269, at *1.  Nor can "[a] complaint . . . be 'well grounded in fact' if a client does not authorize its filing."  *Cimeo v. E. Whiteland-Tredyffrin Joint Transp. Auth.*, 151 F.R.D. 55, 58 (E.D. Pa. 1993) (quoting an earlier version of FED. R. CIV. P. 11).[1]  Accordingly, courts have imposed sanctions on attorneys for filing complaints on behalf of "plaintiffs" that they do not represent.  *See, e.g.*, *In re Engle Cases*, 283 F. Supp. 3d at 1215 ("The dead plaintiffs obviously could not have authorized Counsel to bring lawsuits on their behalf.  Nor did Counsel have authorization from the Pre-Deceased Plaintiffs' estates or their survivors because Counsel pled the complaints as [ ] actions on behalf of the Pre-Deceased Plaintiffs themselves.").

Here, some of the plaintiffs predeceased not only the complaint but also the very cause of action pled—and not by days or weeks, but *years*.  Thus, unless a Ouija board was involved, Ms. Brinton could not have possibly obtained their consent to representation when they died before there was even an idea of the rail at issue becoming a trail.  *Compare* ECF No. 9 at 6 (stating the NITU was issued in 2024), *with* ECF No. 38 (date of death: February 9, 2006).  This is not the sort of clerical error in which, for instance, a represented client passed away after the drafting but prior to the filing of a complaint.  Ms. Brinton *never* represented these individuals.  Indeed, she offered the Court neither evidence nor even argument that she represented these individuals in response to the Court's show cause order.  In fact, as noted above, counsel admits that she never represented them.  *See* ECF No. 37 at 3 ("Plaintiffs moved to file a Second Amended Complaint to correct the oversight in filing the First Amended Complaint with the record-title owners listed, rather than the surviving spouses who had engaged the undersigned." (citing ECF No. 33)).  Instead, she claims this "error" arose because the spouses of the deceased individuals engaged her services.  But Ms. Brinton is surely aware that engagement of an attorney by one spouse does not mean that the attorney represents both spouses as clients.  Naomi Cahn & Robert Tuttle, *Dependency and Delegation: The Ethics of Marital Representation*, 22 SEATTLE U. L. REV. 97, 103 (1998) (discussing that in order to engage in joint representation "the lawyer needs to obtain [both] spouses' informed consent . . . .").  Therefore, even if these plaintiffs had not predeceased the filing of the complaint and the alleged taking, Ms. Brinton's "error" of filing without

---

[1] FED. R. CIV. P. 11 and this portion of the older version of FED. R. CIV. P. 11 are substantively the same as RCFC 11.

authority would still be unacceptable.  Where counsel cries "error," the Court sees an abject failure by counsel to make a reasonable inquiry into who she actually represented before filing the amended complaint.  This was not a complex task.

Ms. Brinton's conduct in filing suit on behalf of eight individuals she does not, and never did, represent warrants sanctions under RCFC 11.  As the Federal Circuit has observed, "Rule 11 calls for sanctions to be imposed on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an 'improper purpose.'  A 'frivolous' argument or claim is one that is 'both baseless and made without a reasonable and competent inquiry.'" *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1374–75 (Fed. Cir. 1996) (internal citations omitted)).  The conduct at issue here is objectively frivolous because these eight deceased plaintiffs obviously could not have authorized Ms. Brinton to bring or maintain a lawsuit on their behalf.  And authorization to file and maintain suit is a basic hallmark of pleading.  Moreover, it is beyond peradventure that counsel should have been aware of the pleading's frivolous nature.  This is not a complicated legal question that would have been difficult for counsel to answer.  A simple review of Ms. Brinton's files would have revealed whether some form of authorization to represent these eight individuals existed.  These individuals either contracted with Ms. Brinton, or they did not.  As counsel likely anticipates filing a petition for fees under the Uniform Relocation Assistance and Real Property Acquisition Act if successful in this litigation, *see* 42 U.S.C. §§ 4654, the Court finds it hard to believe that she did not enter into formal engagement agreements with the individuals she intended to represent in this action.

The rule "states unambiguously that any signer must conduct a 'reasonable inquiry' [that the paper is well grounded in fact] or face sanctions." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 548 (1991).  Here, it is obvious that no such "reasonable inquiry" was made as it would have quickly revealed that these eight individuals were not clients.  Thus, not conducting such a simple inquiry was objectively unreasonable.  *See, e.g.*, *In re Deep Vein Thrombosis*, 2008 WL 2568269, at *3 (finding there was no reasonable inquiry when counsel did not review his emails regarding a purported plaintiff's consent to filing a complaint in his name).  Taking mere minutes to look through her files would have informed Ms. Brinton of which individuals she was authorized to represent.  "The main objective of [Rule 11] . . . is to deter baseless filings and curb abuses," and there is not much more baseless of a filing than a nonconsensual one—especially on behalf of deceased individuals, whose consent is metaphysically difficult to obtain.  *See Bus. Guides, Inc.*, 498 U.S. at 553.

What is more, even if the Court were to consider this conduct under an objective bad faith standard, which it is not required to do, the conduct is sanctionable, as it is a gross deviation from the reasonable expectation to only list one's actual clients as plaintiffs.  *See In re Engle Cases*, 283 F. Supp. 3d at 1217 ("Counsel were [sic] reckless in filing [ ] complaints without any recent contact with the plaintiffs or any investigation into whether the plaintiffs were even alive . . . .").  But RCFC 11 does not require a showing of bad faith; rather, "Rule 11 . . . imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991); *see Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013) ("Importantly . . . Rule 11 does not require a showing of bad faith.").  This is true even for sanctions imposed *sua sponte*: "[A]s several courts have observed,

7

the [ ] position that [bad faith is required for *sua sponte* Rule 11 sanctions] is irreconcilable with the language of the rule, which employs the same representation standards in Rule 11(b), regardless of how the sanctions process is initiated." *1-10 Indus. Assocs., LLC*, 2007 WL 5160385, at *3.

Additionally, the Court must observe that Ms. Brinton's examples of instances in which Rule 11 sanctions were not ordered are unpersuasive. Counsel first cites *White*, 576 F. App'x 327. ECF No. 37 at 6. In that case, sanctions were not awarded when there was a factually inaccurate paragraph in the defendant's pleading, and the attorney corrected the error once aware of it. *See White*, 576 F. App'x at 330–31 (calling the oversight a "clerical error"). If Ms. Brinton had only put the deceased's names in the descriptions of the properties, it may very well be similar to *White*. But that is not the case. Instead, she listed the deceased as *plaintiffs* praying for the relief sought. Whether dead or alive, filing on behalf of someone who is not your client is not a "clerical error." Moreover, the second case Ms. Brinton cites, *In re Bees*, 562 F.3d 284, is inapposite. *See* ECF No. 37 at 6. In that case, the imposition of Rule 11 sanctions was reversed because the statement at issue arose at oral argument—not in a pleading, written motion, or other paper—and the court never ordered the attorney to show cause, thereby precluding the attorney from responding. *In re Bees*, 562 F.3d at 289 ("The rule 'does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection.' . . . Moreover, Rule 11 requires a district court to order counsel 'to show cause why conduct specifically described in the order has not violated Rule 11(b)' . . . ." (citations omitted)). Conversely, here the frivolous statement arose in a pleading, the first amended complaint, ECF No. 9, meaning that it is squarely covered by RCFC 11. Furthermore, the Court issued a show cause order, ECF No. 36, to which counsel responded, ECF No. 37. Therefore, the Court is not swayed by the cases cited by counsel.

Finally, the Court must respond to Ms. Brinton's "no harm, no foul" argument. *See* ECF No. 37 at 9 ("Moreover, there is no indication of any prejudice or harm which requires an appropriate sanction."). First, as listed immediately above, there *was* harm to the Court; second, there was also potential harm to the government in terms of extra discovery related to the deceased; and finally, if left unsanctioned, there would be harm to the judicial system by allowing this sort of conduct to go unchecked. While the Court considers Ms. Brinton's argument that, because the surviving spouses of all the deceased plaintiffs were, in fact, her clients, the claims pled in the first amended complaint are generally accurate, *see* ECF No. 37 at 3, this argument only mitigates the level of sanction imposed. It does not eliminate the need for sanctions. The Court can assure counsel that, were it not for her actual representation of at least one of the owners of each of the eight properties at issue, the sanctions here would be more severe, and further referral for discipline may have been warranted. *See* RCFC 83.2(g)(2)(B)(i). In short, this argument mitigates, but does not absolve counsel of, her conduct.

### 2.    Sanctions for Counsel's Violation of RCFC 11.

Under RCFC 11, a sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated [and] may include nonmonetary directives [or] an order to pay a penalty into court . . . ." RCFC 11(c)(4). Ultimately, a court "is

well within its discretion to fashion[ ] a sanction which is a direct response to the harm that the [ ] conduct of the attorney causes." *Peer v. Lewis*, 571 F. App'x 840, 845 (11th Cir. 2014) (citation and internal quotation marks omitted); *see Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1326 (Fed. Cir. 2011) ("District courts have the inherent power to control litigation by imposing sanctions appropriate to rectify improper conduct by litigants." (internal citation and quotation marks omitted)); *PS Prods. Inc. v. Panther Trading Co. Inc.*, 122 F.4th 893, 898 (Fed. Cir. 2024) (stating the same standard).

The Court determines that a sanction of $500 per individual who predeceased the filing of the complaint is appropriate. As discussed above, Ms. Brinton's conduct could have been avoided by simply reviewing which individuals actually engaged her services prior to filing the amended complaint. By failing to take this minor step of essentially proofreading the amended complaint and its caption, Ms. Brinton has wasted this Court's time and resources in having to review the notices of death and the motion for leave to amend the first amended complaint; issuing the show cause order; reviewing counsel's response to the show cause order; and researching and writing this opinion. This all has a cost. Additionally, these sanctions must deter similar conduct in future litigation—not only the conduct of Ms. Brinton, who is not an infrequent advocate before this Court, but the conduct of other members of the Court's bar. What happened here simply cannot happen. It is unacceptable to file suit on behalf of individuals or entities that an attorney does not represent.

In addition to monetary sanctions, RCFC 11(c)(4) also states that a sanction "may include nonmonetary directives . . . ." "Rule 11's commentary provides a number of examples of possible nonmonetary sanctions, including 'issuing an admonition, reprimand, or censure[, and] requiring participation in seminars or other educational programs . . . .'" *In re Engle Cases*, 283 F. Supp. 3d at 1257–58 (citing FED. R. CIV. P. 11, Adv. Cmt. Note, 1993 Amend., subdivisions (b) and (c)). Nonmonetary sanctions are largely fact-dependent and turn on the specific transgression that occurred. *See* JEROLD S. SOLOVY, NORMAN M. HIRSCH, & MARGARET J. SIMPSON, SANCTIONS UNDER RULE 11 135 (2010) ("The selection of a nonmonetary sanction will depend in large part upon the facts of a given case."). Specifically, courts have held that continuing legal education ("CLE") is an appropriate sanction in instances in which counsel must "become familiar with the legal principles that have apparently escaped [counsel] during the course of [ ] litigation." *Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 596 (D.N.J. 2003) (mandating CLE when counsel attempted to relitigate claims in federal court after resolution in state court); *see, e.g.*, *Lifetime Well LLC v. IBSpot.com Inc.*, 819 F. Supp. 3d 373, 384 (E.D. Pa. 2026) (listing instances in which attorneys were ordered to complete mandatory CLE for failing to review the authorities cited in their filings). The Court is unsure of how such a basic principle as filing suit only on behalf of someone who is actually a client (and double-checking to ensure this is the case) escaped Ms. Brinton. But whatever the reason, some refreshment on professional responsibility and legal ethics is certainly in order. Therefore, the Court finds that six hours of CLE on professional responsibility and legal ethics is an appropriate additional sanction here.

9

## CONCLUSION

"[T]his holding seems clear and easily reached" because filing without authority to do so is patently unreasonable. *Cimeo*, 151 F.R.D. at 58 (footnote omitted). The Court has a duty to ensure that lawyers who practice before it do so ethically and responsibly. The Court does not relish imposing sanctions, but it must nonetheless do so for both the deterrent effect of the sanction and for the waste of the Court's time and resources that led to this point. Accordingly, for the foregoing reasons, the Court hereby **SANCTIONS** Ms. Brinton $4,000 ($500 per individual for each of the eight individuals who predeceased the filing of the amended complaint), which shall be paid by Ms. Brinton to the Clerk of the Court and without recourse to her clients. Additionally, she **SHALL** complete 6 hours of CLE on issues related to professional responsibility and legal ethics, which shall not count toward any preexisting CLE requirements she may have. Within 45 days of the issuance of this opinion, Ms. Brinton **SHALL** file a notice on the docket certifying that she has completed this CLE requirement and attaching thereto any certificates or other documentation of attendance. Finally, as client communication seems to be part of the issue here, Ms. Brinton **SHALL** ensure that a copy of this decision is sent to every plaintiff in this case, and she **SHALL** file a notice confirming this had been done within ten days of the issuance of this opinion.

**IT IS SO ORDERED.**

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge

10